**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NANCY GONZALES,

        Plaintiff,

v.                                                                                                                                      No. CIV 02-463 BB/WWD

CHIEF FRANK GALLEGOS, individually
and in his capacity as Chief of the Village of
Questa Police Department, and VILLAGE OF
QUESTA,

        Defendants.

**<u>MEMORANDUM OPINION</u>**

        THIS MATTER comes before the Court for consideration of Defendants' motion for summary judgment (Doc. 10). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion will be granted as to Plaintiff's federal claim. The Court will decline to exercise supplemental jurisdiction over Plaintiff's state law defamation claim. Accordingly, the federal claim will be dismissed with prejudice and the state claim will be dismissed without prejudice.

        Plaintiff filed a complaint alleging that Defendant Gallegos had defamed her by making false statements indicating that Plaintiff "used to run narcotics" to the Questa area of New Mexico, and that she "may still participate in narcotics trafficking in some capacity..." Plaintiff alleged that these falsehoods, contained in a memorandum that was released to the public in some manner, caused irreparable injury to Plaintiff's reputation, and caused her to lose her position as the principal of the public elementary school in Questa. Plaintiff raised a federal constitutional claim, stating that the

defamatory statements by Defendant Gallegos deprived her of a liberty interest, deprived her of her "rights (sic) to reputational liberty," and violated her procedural and substantive due process rights.[1] Two months after filing the answer in this case, and before any formal discovery had been completed, Defendant Gallegos moved for summary judgment, arguing: (1) he is entitled to absolute or, at minimum, qualified immunity; (2) Plaintiff's complaint fails to state a claim for a constitutional violation; and (3) Plaintiff's complaint fails to state a state-law defamation claim because Defendant Gallegos' statement was privileged and there is no allegation that he abused the privilege. In response, Plaintiff maintains she needs to perform discovery before she can properly respond to the motion for summary judgment.

Despite the lack of discovery, a few facts have become clear and undisputed in the summary-judgment process. First, Defendant Gallegos did not write the memorandum containing the allegedly defamatory statements. He made the statements orally to an FBI agent, who then included the statements in a written memorandum. Second, Plaintiff was not fired from her position as principal; instead, her contract expired and the school did not enter into a new contract with her. Third, there is no evidence or allegation that Defendant Gallegos was a member of the school board, or had any power to take action with respect to the renewal of Plaintiff's contract. As discussed below, these facts are crucial with respect to Plaintiff's constitutional claim.

**Summary Judgment Standard:** "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] Plaintiff was never charged with any crime as a result of the statements made by Defendant Gallegos.

judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995).

In this case, in addition to the above-stated rules, a special standard applies because Plaintiff has had no opportunity to conduct formal discovery. Generally, summary judgment should not be granted prior to the completion of discovery. However, where a motion for summary judgment has been filed, the burden is on the party opposing that motion to show what material facts remain to be discovered that would preclude summary judgment. *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988). Where, as here, the plaintiff has filed a Rule 56(f) affidavit requesting discovery, the party filing the affidavit must show how the additional discovery will enable her to establish a genuine issue of material fact. *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993). It is not an abuse of discretion for this Court to refuse to delay ruling on the summary judgment motion, if the discovery Plaintiff seeks will be fruitless. *Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989). The Court will consider Defendants' motion for summary judgment in light of these standards.

**Discussion-- Constitutional Claim:**  For purposes of this opinion, given the lack of discovery to date, the Court accepts the following allegations as true:  (1) The statements made by Defendant Gallegos to the FBI were false, he had no good-faith basis for making them, and he knew they were false when he made them; (2) Defendant Gallegos played an active role in disseminating the memorandum, containing his false statements, to the public in the Questa area; and (3) the reason Plaintiff was not rehired as a principal was because of the false statements Defendant Gallegos made, accusing Plaintiff of being involved in drug-dealing activities.  These are the most favorable facts Plaintiff could hope to discover if she were given the opportunity to depose Gallegos, the FBI agents, and the school board members or other decision-makers who made the final decision not to renew her contract.  Even under these most favorable facts, however, under Tenth Circuit precedent Plaintiff has not stated a constitutional claim.

Defamation by a state actor rises to the level of a constitutional claim only in narrowly defined circumstances.  Standing alone, where the only damage is to the plaintiff's reputation, defamation gives rise only to a state-law claim and is not sufficient to establish a constitutional violation.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1153 (10th Cir. 2001).  In addition, not just any defamatory statement will give rise to a constitutional claim, even if the statement causes tangible harm to the plaintiff.  Such a statement will be considered a constitutional violation only if, among other things, the statement was made in the course of terminating the employee.  *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 728, n. 1 (10th Cir. 2000).[2]  According to *Renaud*,

---

[2] In this case, Plaintiff was not terminated; instead, she was refused rehire.  Such refusal to rehire, however, has been found equivalent to termination for purposes of the constitutional-defamation analysis.  *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 983-84 (9th Cir. 2002).

the "in the course of" requirement means that the defamatory statement must concern the reasons for terminating the plaintiff's employment. If the statement has nothing to do with the plaintiff's employment, performance as an employee, or discharge from employment, the statement will not be considered to be "in the course of" the termination of employment. *Renaud*, 203 F.3d at 728. In the case now before this Court, the statements by Defendant Gallegos had nothing at all to do with Plaintiff's employment as a school principal, were not made contemporaneously with the school district's decision refusing to renew Plaintiff's contract, and had no connection at all to the school. Therefore, under *Renaud*, the statements cannot be considered to have been made in the course of terminating Plaintiff's employment or refusing to rehire her. It follows that the statements cannot be found to have violated Plaintiff's constitutional rights.

Another difficulty with Plaintiff's constitutional claim is the fact that Defendant Gallegos, who made the defamatory statements, was not Plaintiff's employer and played no direct role in refusing to renew her contract. Under similar circumstances, where a third party has made a defamatory statement that causes a different entity to take adverse action against the plaintiff, courts have refused to find a constitutional violation. *See Hawkins v. Rhode Island Lottery Com'n*, 238 F.3d 112, 115-16 (1st Cir. 2001) (where governor allegedly defamed plaintiff director of commission, but commission and not governor made decision to fire plaintiff, plaintiff failed to state constitutional claim against governor); *Sullivan v. New Jersey Div. of Gaming Enforcement,* 602 F.Supp. 1216 (D.N.J. 1985) (state officials defamed plaintiff, causing third party to back out of contract with plaintiff; no due process claim stated); *see also Gini v. Las Vegas Metropolitan Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994) (municipal police officer defamed plaintiff to her employer, a federal magistrate judge; judge fired plaintiff; no constitutional defamation claim stated against officer, because officer did not

fire plaintiff and there was no allegation the officer knew or should have known plaintiff would be fired without due process as a result of officer's statements to judge); *Siegert v. Gilley*, 500 U.S. 226 (1991) (plaintiff's former government employer wrote defamatory letter several weeks after plaintiff left job; defamatory letter caused other government employers to reject plaintiff's applications for employment, but no due process claim stated because defamatory statement was not made incident to the termination of plaintiff's employment).

In an unpublished opinion, the Tenth Circuit has indicated that Circuit law is "unclear" on whether a plaintiff can bring a constitutional action based on actions taken by third parties in response to defamatory remarks made by other government officials. *Vann v. Oklahoma State Bureau of Investigation*, 2001 WL 1515864 (10th Cir.). As discussed above, however, in *Renaud* the Tenth Circuit held that a defamatory statement must be made in the course of terminating a plaintiff's employment, to be actionable as a constitutional violation. A defamatory statement by a different government official, who has no power or authority over the plaintiff's employment, does not satisfy this requirement. The Court therefore believes that, at least in the context of a case like this one, the Tenth Circuit would follow the cases which refuse to recognize a constitutional claim for defamation, where the defamatory statement was made by a third party and not by the official or department that terminated the plaintiff's employment.

In addition, this case is directly analogous to *Stidham, supra*, and *Siegert, supra*. Both of those cases hold there is no due process violation when one government official makes a defamatory statement which causes other governmental entities to refuse to hire the plaintiff. The only difference in this case is that this was not a situation in which Plaintiff was rejected for initial employment. Instead, the defamatory statement by Defendant Gallegos caused Plaintiff's employer to refuse to re-

6

hire her. There does not appear to be a logical difference, however, between a defamatory statement that causes a refusal to make an initial hire, and a defamatory statement that causes a refusal to renew an employee's expired contract, for purposes of the due-process defamation analysis.³ The Court is therefore bound by *Stidham* and *Siegert*, and finds Plaintiff has failed to establish that Defendant Gallegos violated her constitutional rights when he made the defamatory statements accusing her of being involved in drug dealing.

**State Law Defamation Claim:** If Plaintiff's defamation claim appeared completely without merit under state law, it might be appropriate for this Court to exercise supplemental jurisdiction over it and dismiss it with prejudice, in the interests of judicial economy. It does appear that Plaintiff's claim may face significant hurdles. For example, although the facts have not yet been established, at this point it appears Defendant Gallegos did not play a role in disseminating the memorandum, containing the defamatory statements, to the public. Unless Plaintiff can show Defendant Gallegos himself published the defamatory statements to persons other than the FBI, Plaintiff will probably be required to show that the FBI's republication of Gallegos' statements was authorized or intended by Gallegos, or that he reasonably should have expected the FBI to republish his statements, in order to recover for damages resulting from such republication. *See Restatement (Second) Torts*, § 576 (discussing liability of initial defamer for any repetition or republication of the defamation by third parties). At this point, however, the Court cannot rule as a matter of law that Plaintiff could not make such a showing. The preferable course of action, therefore, given the early stage of these

---

³Plaintiff has not made an attempt to demonstrate that she had a protected property interest in the renewal of her contract, arising out of the school district's policies or practices. Instead, she concedes she had no right to a hearing concerning the district's refusal to renew her contract. Thus, the decision not to renew the contract is the same, for constitutional purposes, as a decision not to hire her in the first place.

proceedings and the fact that the only federal claim is being dismissed, is to decline to exercise supplemental jurisdiction over the state law claim, and dismiss it without prejudice. *See Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir.2001); 28 U.S.C. § 1367. This is even more true given the fact that Defendants are requesting rulings concerning significant questions of state law that should be decided in state court, such as the existence and extent of a privilege to make statements to other law enforcement officers during the course of an investigation.

**Conclusion:** Based on the foregoing, the Court will grant Defendants' motion for summary judgment. Plaintiff's federal claim will be dismissed with prejudice, and her state law defamation claim will be dismissed without prejudice.

Dated this 14th day of February, 2003.

                                                                                        _____
                                                                                        BRUCE D. BLACK
                                                                                        United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
Samuel M. Herrera

**For Defendants**:
Virginia Anderman